UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-195-GWU


CLYDE WAYNE LAWSON,                                      PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.


## INTRODUCTION

Clyde Lawson brought this action to obtain judicial review of an unfavorable

administrative decision on his application for Supplemental Security Income.  The

case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Lawson, a 53-year-old former construction worker and supervisor with a "marginal" education, suffered from impairments related to degenerative conditions of the lumbar spine and depression.  (Tr. 13, 18-19).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 16, 18).  Since the available work was found to constitute a significant number of jobs in the national

economy, the claimant could not be considered totally disabled.  (Tr. 19-20).  The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert William Ellis included an exertional limitation to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to more than occasionally perform pushing and pulling with the right upper extremity; (2) an inability to more than occasionally climb ladders, ropes or scaffolds and stoop; (3) a need to avoid concentrated exposure to vibration, vibratory equipment, pulmonary irritants such as dusts, fumes, odors, or  gases, and hazards such as unprotected heights and dangerous machinery; (4) a limitation to simple instructions in an object-focused work setting with no more than occasional public contact; and (5) no more than occasional changes in work settings or routines.  (Tr. 49-50).  In response, the witness identified a significant number of jobs in the national economy which could still be performed including dish washer (193,000 national  jobs), and  packaging and filling machine operator (297,000 national jobs) cited as examples.  (Tr. 50). The ALJ later added restrictions concerning an inability to ever crawl and climb

ladders, ropes or scaffolds, an inability to more than occasionally stoop, bend, crouch or climb ramps and no prolonged sitting or standing each for periods longer than 30 minutes.  (Id.).  The witness testified that these additional limitations would eliminate the dish washer position and reduce the available job base by 50 percent but leave a significant number of jobs in the national economy.  (Id.).  The expert cited the position of inspector (49,000 jobs) as an example to replace the dish washing job.  (Tr. 50-51).  Finally, Ellis reported that the addition of an inability to more than occasionally perform overhead motions with the right upper extremity would not reduce the available job base.  (Tr. 51).  Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Lawson's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error.  Dr. Ninad Karandikar examined Lawson and noted an impression of chest pain, acid reflux disease and back and neck pain. (Tr. 225).  Dr. Karandikar opined the plaintiff would have "moderate" restrictions in his ability to stoop, bend, reach, stand, move about, lift, carry and travel.  (Id.).  The vocational factors considered by Ellis were essentially consistent with these limitations. Thus, the opinion of Dr. Karandikar supports the administrative decision.

Dr. Vicente Kaw examined Lawson and noted an assessment of chest pain, chronic obstructive pulmonary disease and low back pain.  (Tr. 322).  The only restriction on the plaintiff's activities identified by the doctor was a need to quit smoking.  (Id.).  The ALJ's findings are compatible with this opinion.

Dr. Sudhideb Mukherjee (Tr. 256-263) and Dr. James Ramsey (287-294) each reviewed the record and opined that Lawson would be limited to light level work, restricted from a full range by a "limited" ability to push and pull with the upper extremities, an inability to more than occasionally stoop and climb ladders, ropes or scaffolds, and a need to avoid concentrated exposure to vibration, fumes, odors, dusts, gases or poor ventilation and hazards.  The ALJ's findings were consistent with these opinions.  Therefore, the reports of the medical reviewers provide additional support for the administrative decision.

Dr. Sharon Fogleman, a treating physician at the Red Bird Clinic, identified a number of more severe physical restrictions than those found by the ALJ on a Functional Capacities Form including an inability to sit for more than a total of three hours a day in 30 minute intervals, stand for more than an hour a day in intervals of 15 minutes, and walk for more than a total of one hour a day in 15 minute intervals.  (Tr. 334).  When Dr. Fogleman's limitations were presented to Ellis, he reported that no jobs could be performed.  (Tr. 51).  The ALJ rejected Dr. Fogleman's opinion as binding because he felt that the physician relied upon the

plaintiff's subjective complaints and were contradicted by his activities of daily living. (Tr. 17).  The plaintiff argues that the ALJ erred in his duty to provide sufficient "good reasons" for rejecting the opinion of a treating physician under the federal regulations at 20 C.F.R. § 416.927(d) and this omission requires a remand of the action for further consideration.  Wilson v Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Treatment records from Dr. Fogleman indicate that she did complete the assessment with the "assistance" of Lawson.  (Tr. 338).  A physician's opinion is not entitled to controlling weight if it is based on the claimant's own assessment of his abilities.  Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004).  A June, 2008 MRI scan of the lumbar spine cited by the physician in support of her restrictions revealed only mild degenerative disc disease with bulging and no sign of spinal stenosis or disc herniation and was cited by the ALJ in his evaluation of the medical evidence.  (Tr. 13, 335).  The court notes that the ALJ also indicated relying upon the medical record as a whole, noting the "moderate" limitations imposed by Dr. Karandikar, an examining source, and the less severe restrictions identified by the agency reviewers.  (Tr. 17).  As noted by the ALJ, x-rays of the claimant's lumbar spine were reported to be essentially unchanged in 2007 from 2002, a time period well before he alleges he became disabled.  (Tr. 13, 210).  Dr. Karandikar reported full grip strength and a full range of motion in both the upper

and lower extremities.  (Tr. 13, 225).  While the plaintiff alleged disability due to breathing problems and chest pain, he remained a heavy smoker.  (Tr. 13, 30, 335).  In Mullins v. Secretary of Health and Human Services, 836 F.2d 980 (6th Cir. 1987), the court found that in view of a claimant's continued smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition."  Id. at 985.  A pulmonary function study by Dr. Karandikar revealed only mild restrictive lung disease.  (Tr. 14, 225).  In addition to smoking, the ALJ considered his activities of watching television, caring for several animals and mowing the lawn. (Tr. 15).  Therefore, the undersigned concludes that the ALJ cited good reasons for rejecting the opinion of Dr. Fogleman despite her status as a treating source.[1]

The ALJ dealt properly with the evidence of record relating to Lawson's mental condition.  Psychologist Phil Pack examined the plaintiff and diagnosed a depressive disorder and borderline intellectual functioning.  (Tr. 310).  Pack opined that the claimant would have a "marked" restriction in his ability to carry out complex instructions and a "moderate" limitation in understanding and remembering complex

---

[1]Hensley v. Commissioner of Social Security, 573 F.3d 263 (6th Cir. 2009), cited by the plaintiff, is distinguishable from the present case.  In Hensley, a restriction given by a treating source was rejected only because a one-time examiner had reached the opposite conclusion.  Id. at 266.

instructions.  The limitation to simple instructions would accommodate this restriction.  Therefore, Dr. Pack's opinion supports the administrative decision.

Psychologist Jeanne Bennett examined Lawson and diagnosed a depressive disorder and borderline intellectual functioning.  (Tr. 234).  A "moderate" limitation concerning stress and a "slight to moderate" restriction concerning attention and concentration were reported.  (Id.).  These restrictions were arguably compatible with those of the hypothetical question but even if not, they would be offset by those of Pack.  Therefore, Bennett's report does not support the plaintiff's disability claim.

Psychologists Jane Brake (Tr. 252-253) and Ilze Sillers (Tr. 267-268) each reviewed the record and opined that Lawson would be "moderately" limited in such areas as handling detailed instructions, interacting appropriately with the general public, responding appropriately to changes in the work setting and setting realistic goals or making plans independently of others.  Each reviewer noted that despite these mental limitations, the plaintiff would be able to understand and recall simple material, sustain attention and concentration to persist at simple tasks for two hour segments, function in an object-focused setting with little public contact and adapt to routine changes.  (Tr. 254, 269).  The ALJ's findings are also essentially consistent with these opinions.  Therefore, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 9th day of March, 2011.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**